# CASES DECIDED

# MARCH TERM, 1891.

NEW ENGLAND MORTGAGE SECURITY CO. *v.* McLAUGHLIN.

Where a note, executed in this State, is made payable in the State of New York, and is secured by a mortgage which stipulates "that the contract embodied in this mortgage, and the note secured hereby, shall, in all respects, be construed according to the laws of Georgia," and the note on its face bears interest at the rate of 8 per cent. per annum, the same being legal in Georgia, the entire amount of such interest is collectible in this State, notwithstanding the maximum legal rate of interest in the State of New York may be less than 8 per cent.

March 16, 1891. Argued at the last term.

Interest and usury. Contracts. Before Judge SMITH. Marion superior court. October term, 1889.

Reported in the decision.

W. E. SIMMONS, for plaintiff.

THORNTON & CAMERON and B. F. McLAUGHLIN, for defendant.

LUMPKIN, Justice.

McLaughlin gave his note to the New England Mortgage Security Company, promising therein to pay interest from its date at the rate of 8 per cent. per annum, and secured the same by a mortgage on land in Georgia, containing the stipulation quoted in the above head-note. The note was made payable in the city of New York. Plaintiffs foreclosed said mortgage in the superior court of Marion county. The defence was, that the note being made payable in New York, it must be enforced according to the laws of that State; and as the maximum

legal rate of interest in said State is six per cent., the note is, for this reason, on its face, usurious. Plaintiffs recovered the full amount appearing to be due on the face of the note, and a motion was made for a new trial by the defendant, which was granted by the court below. We presume the new trial was granted on the ground that the note was usurious, because the motion contains no other ground upon which it could have been granted.

The only question presented by the record for our determination is, whether or not this note was affected with usury for the reason stated. The question, whether or not a note made payable in a different State than that in which it is executed and bearing a given rate of interest legal in the State where made, is usurious when the contract rate of interest expressed therein is higher than the legal rate prescribed in the State where payable, has been often and fully discussed by many courts and text-writers. But for the fact that so much contrariety of opinion has been expressed upon the question, the writer would deem it a plain one, especially where the contract itself, as in the present case, provides that it shall be in all respects construed by the laws of the State in which it is made. Deferring, however, to the large number of respectable authorities entertaining a different view, some discussion of the question will be now attempted. In the first place, it would seem that the parties themselves are the best judges of what they wish to accomplish by their contract, and if such contract contains no provision *per se* illegal, vicious or contrary to public policy, it ought to be enforced. It has often been held that parties will not be allowed to make contracts to be performed in another jurisdiction for the purpose of evading the usury laws of their own domicile, but this doctrine can have no application where the maker of a note contracts consistently with the laws of

his own State.   Many authors and judges have laid
down the rule that, in cases of this kind, effect should
be given to the actual intention of the parties as to
what rate of interest should prevail and under what law.
And some go to the extent of holding that this inten-
tion may be gathered from facts and circumstances at-
tending the transaction and outside of the note itself.
If in Georgia, where 8 per cent. interest is legal, a resi-
dent of this State desires to make himself liable for that
rate upon a note to be paid in another State, and delib-
erately undertakes so to do, it is difficult to conceive
any good reason of morals or policy why this should not
be allowed.   If in such a note no rate of interest were
specified, the rate prevailing in the State where the
contract was to be performed would be that collected.
And this conclusion, it seems, is arrived at, in many de-
cisions, mainly on the idea that where the contract is
silent as to the rate of interest, it is presumed that the
parties intended that the legal rate of the place where
the paper is payable should apply.   In his work on
Contracts, §1372, Mr. Bishop states as a general rule
that "A contract valid where made is valid everywhere,
and one invalid where made is everywhere invalid."
Again, in §1388, he says : "If the agreed interest is law-
ful in the State where the bargain is entered into, the
courts of this State will enforce the contract, though the
payment is by its terms to transpire in another State
where it is unlawful."   Citing Thornton v. Dean, 19
S. C. 583 ; Pancoast v. Travelers' Ins. Co. 79 Ind. 172 ;
Richardson v. Brown, 9 Baxt. 242 ; Lindsay v. Hill, 66
Mc. 212 ; Sheldon v. Haxtun, 91 N. Y. 124. In 1 Daniel
on Negotiable Instruments, §922, the case of DePau v.
Humphries, 20 Mart. (La.), 1, is mentioned, holding
that a note made in Louisiana bearing 10 per cent. in-
terest, which was legal in that State, would not be usu-
rious but valid, though payable in New York where all

contracts to pay more than 7 per cent. were at that time usurious; and the author remarks that "The like view has been recognized and adopted in numerous cases, and may be regarded as a recognized principle of English and American jurisprudence," citing many authorities. The same doctrine is set out in 2 Kent's Commentaries, p. *460, as follows: "If, however, the rate of interest be specified in the contract, and it be according to the law of the place where the contract was made, though that rate be higher than is lawful by the law of the place where payment was to be made, the specified rate of interest at the place of the contract has been allowed by the courts of justice in that place, for that is part of the substance of the contract." Mr. Randolph, in his work on Commercial Paper, vol. 1, §43, says: "In determining whether a bill or note is usurious, the courts have leaned noticeably to decisions sustaining the instrument, if valid by the law of any place, whether of contract or of payment, and this somewhat in disregard of any general rule. If a different rate of interest is fixed by law in the place of contract and of payment, the parties may elect either rate to govern their contract. Thus, they may choose the rate of the place of payment, that being the higher; or the rate of the place of contract, if that is the higher." The doctrine above quoted seems to proceed on the idea that the intention of the parties should govern. To the same effect, see 2 Parsons on Contracts, 583, 584.

All the authorities above cited refer to notes or other contracts which have not in them a distinct stipulation that the contract shall be construed according to the laws of the place where made. A recent Texas case, that of Dugan v. Lewis, 14 S. W. Rep. 1024, decides the precise question presented by the case at bar. In that case a note bearing a rate of interest which would have been usurious in New York where it was made

payable, was executed in Texas and secured by a deed of. trust which contained a stipulation identical with that in the mortgage made by McLaughlin, except that the word "other" is there introduced between the words "all" and "respects." In a carefully considered and well prepared opinion, Henry, J., sets forth the views of the Supreme Court of Texas, reaching the conclusion that the contract in question was governed by the usury laws of Texas. A large number of authorities are referred to and discussed, which need not be noticed in detail, because that opinion speaks for itself, and is a clear and able exposition of the law on this subject. We will observe, however, that the learned Justice remarked, in substance, that it was not entirely clear the stipulation referred to had reference to the rate of interest, except in a general way. He further says that this expression "should be taken as a circumstance to be considered in ascertaining and giving effect to the intention of the parties." We are prepared to go further on this line, and have little doubt that the parties to this contract distinctly meant by this very stipulation that the contract as to interest and every other essential feature and particular, should be not only construed but enforced according to the laws of the State where it was made. In the case before us, we are quite sure that the parties to the note and mortgage under consideration meant and intended that they should be in all respects understood and *carried out* as Georgia contracts, and enforced under Georgia laws. And after all, is it not plain and simple justice to give this effect and meaning to these words? To do otherwise, it seems to us, would defeat the expressed wishes and intention of these parties. To construe this note and mortgage as we have done works injustice to no one, but puts the parties where they manifestly intended to put themselves. The defendant, having made a note

and mortgage in the State of Georgia and bound himself to pay interest at the rate of 8 per cent., and agreed that this contract should be construed in all respects according to the laws of Georgia, should stand to his promises. The contract being under our laws perfectly legal, he cannot and ought not to expect the courts of this State to release him from his solemn and deliberate undertakings.        *Judgment reversed.*