## 38777. CARR et al. v. KUPFER et al.

SMITH, Justice.

This appeal concerns a dispute over an antenuptial contract. In November 1974, James Carr (now deceased) and Shirley Pierce (now Shirley Carr, and appellant herein) executed a document entitled "Antenuptial Agreement." In the first paragraph of the contract, each party waived all rights in the other's estate at death except as otherwise provided in the contract. The agreement then provided for distribution of certain of James' assets to Shirley with one condition: In case appellant received a civil service or military pension by virtue of her marriage to James, she would take nothing. Finally, the contract stated that James' 1971 will was to remain in effect. In his will James left his entire estate to appellees Melissa Kupfer and Melanie Kaestner, who are James Carr's daughters by a previous marriage.

The 1974 antenuptial agreement was executed in Maryland, the parties' residence at that time. The contract states that it is to be construed according to Maryland law.

---

The Carrs were married in Maryland in 1974 and moved to Georgia in 1978. James Carr died on April 4, 1981, and appellees petitioned for probate of the 1971 will in Gwinnett County. Appellant filed a caveat, asserting that the will was revoked by the testator's subsequent marriage and therefore void under Code Ann. § 113-408. Appellant has also, filed a petition requesting $95,000 for year's support. Appellant currently receives a civil service pension of $900 per month by virtue of her marriage to Carr.

The probate court refused to probate the will and appointed appellant administratrix of the estate. Appellees then filed this suit seeking specific performance of the antenuptial agreement and imposition of a constructive trust over the property of the estate. Appellant filed her answer and counterclaimed for conversion, trespass, and for a declaratory judgment delineating the parties' respective rights and duties respecting the property of the decedent's estate. The superior court granted summary judgment for appellees, ordering specific performance of the antenuptial agreement and impressing a trust over the assets of the estate.

1. We must first decide whether to apply the law of Maryland or Georgia in determining the validity of the antenuptial contract executed by appellant and her husband. Although we would reach the same result under either state's law,[1] we think the trial court correctly applied Maryland law in upholding the antenuptial waiver.

The 1974 agreement stated that "[t]his Agreement shall be construed under the Laws of the State of Maryland and including, but not limited to, the provisions contained in Section 3-205, Article 93, Annotated Code of Maryland." The controlling statute, Md. Est. & Trusts Code Ann. § 3-205 (formerly Article 93, § 3-205) provides for broad antenuptial waiver of all statutory and inheritance rights, including year's support. Relying on this law, the trial court upheld the validity of the antenuptial contract and ordered specific performance.

The trial court correctly applied Maryland law. Absent a contrary public policy, this court will normally enforce a contractual choice of law clause. *New England Mtg. Sec. Co. v. McLaughlin,* 87 Ga. 1 (13 SE 81) (1891). See *Nasco, Inc. v. Gimbert,* 239 Ga. 675, 676 (238 SE2d 368) (1977); Restatement (Second) of Conflict of Laws § 187 (1971). Here the parties clearly chose Maryland law as

---

[1] Antenuptial agreements in which a spouse waives his or her rights in the other spouse's estate at *death* (as distinguished from agreements executed in contemplation of *divorce*) have long been valid in Georgia. *Scherer v. Scherer,* 249 Ga. 635, 638 (292 SE2d 662) (1982); *Nally v. Nally,* 74 Ga. 669 (1885).

controlling. Appellant does not cite a public policy forbidding enforcement of this antenuptial contract, and we are not aware of any such policy. We therefore hold that the antenuptial contract, entered into voluntarily by appellant, is valid and binding according to Maryland law.

2. In contrast to the antenuptial contract, the validity of James Carr's will must be determined under Georgia law. The general rule is that courts apply the law of the testator's domicile at the time of death. *Arrington v. Hosemann,* 224 Ga. 592 (163 SE2d 722) (1968). It is an uncontroverted fact that Carr was a Georgia domiciliary when he died in 1981. Thus the will must stand or fall according to the law of Georgia.

Code Ann. § 113-408, in relevant part, provides: "In all cases, the marriage of the testator . . . subsequent to the making of a will in which no provision is made in contemplation of such an event, shall be a revocation of the will." Under this statute, James Carr's will was revoked by operation of law when he married appellant in 1974. See *Johnson v. Cromer,* 234 Ga. 73 (214 SE2d 644) (1975). Since Carr failed either to execute a will subsequent to his marriage or to republish his 1971 will, he died intestate. Plainly the 1971 will is void and cannot be probated.

The equitable relief granted by the trial court was necessary to enforce appellant's waiver and to preserve the assets of the estate. See, e.g., *C. & S. Nat. Bank v. Leaptrot,* 225 Ga. 783 (171 SE2d 555) (1969); *Dyer v. Lanier,* 224 Ga. 371 (162 SE2d 340) (1968). By virtue of her 1974 agreement with the decedent, appellant waived all rights to her husband's estate at death. Although Carr's 1971 will is void, appellees are entitled to petition as heirs for distribution of his estate. See Code Ann. Ch. 113-28.

We have examined appellant's remaining enumerations and find them to be without merit. We affirm and remand for proceedings consistent with this opinion.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 27, 1982.

*Collar, Sacks & Yates,. Robert C. Sacks,* for appellants.
*David S. Walker, Jr.,* for appellees.