A02A0160, A02A0161. GREENSBORO FORD, INC. v. FORD MOTOR COMPANY; and vice versa.

(568 SE2d 758)

POPE, Presiding Judge.

Greensboro Ford, Inc. and Randolph Jackson sued Ford Motor Company, alleging that it breached the parties' dealership contract in a variety of ways. Ford moved for summary judgment, and Greensboro Ford moved for partial summary judgment. The trial court granted Ford's motion on three issues, two of which are involved in this appeal. In Case No. A02A0160, Greensboro Ford appeals the trial court's grant of summary judgment on those two issues. After appropriate permission from this court, in Case No. A02A0161, Ford appeals the denial of its motion on the other issues.

On February 3, 1988, Greensboro Ford entered into a sales and service agreement contract with Ford by which Greensboro Ford became a dealer for Ford. Randolph Jackson signed the agreement as president of Greensboro Ford. Among the contract's provisions were details regarding the dealership's location and the specification that Greensboro Ford could not change its location without Ford's prior written consent and the "mutual execution of a Dealership Facilities Supplement."

---

When the parties entered into the contract, Greensboro Ford's address was listed as "Rt. 2, Hwy. 278, Box 3" in Greensboro, Georgia. About a year after this contract was executed, the address for Greensboro Ford changed to "1191 E. Broad Street, Greensboro."[1] Greensboro Ford advised Ford in writing of this change. The change was noted by Ford by striking out the original address and indicating the new street address, without the new box number, in a handwritten insertion. On January 31, 1990, the parties executed an extension of the agreement which listed Greensboro Ford's address as "1191 East Broad Street, Greensboro, Georgia."

In January 1992, Greensboro Ford's address changed when it changed locations. Greensboro Ford contends that it notified Ford in writing of the change in address. Nevertheless, there is no dispute that the parties did not execute an agreement about the change of address, nor is there any dispute that the 1191 East Broad Street address remained the address on Ford's records.

In October 1992, the Central and Southern Bank of Georgia sent a letter notifying Ford that it had foreclosed on Greensboro Ford's real property.

Greensboro Ford stopped operating its retail sales in the last part of 1992. On June 7, 1993, Ford sent a termination letter to Greensboro Ford at the 1191 East Broad Street address. According to evidence Ford produced, it copied Greensboro Ford's Randolph Jackson on the letter. Ford also claims that it gave oral notice of the termination in a phone conversation to Greensboro Ford's counsel at the time; this conversation is confirmed in a letter from that counsel dated June 8, 1993.

Greensboro Ford claimed that it never received the notice of termination which was returned as unclaimed to Ford. In August 1993, Ford consented in writing to allow another Ford dealership, Johnson Ford Sales, to maintain an additional place of business at the former Greensboro Ford location.

In July 1997, Greensboro Ford and Jackson filed suit against Ford and Johnson Ford seeking a temporary and permanent restraining order to prevent Johnson Ford from continuing to operate its Greensboro location. Greensboro Ford also alleged that Ford had breached its contract; it asserted a third-party beneficiary claim against Johnson Ford and it sought attorney fees, alleging bad faith and stubborn litigiousness.

Ford filed its motion for summary judgment contending that

---

[1] Although not dispositive of the issue, we note that there is a conflict between Greensboro Ford's representations that it moved the dealership to 1191 East Broad Street, and a letter from Jackson in the record which states that this address was changed because "of changes in street numbers by our local post office."

Greensboro Ford had offered no evidence to create any genuine issues of fact as to any of its claims. In response, Greensboro Ford submitted Jackson's statement and the affidavit of its general manager, P. E. Ethridge. After hearing oral argument, the superior court granted the motion in part and denied it in part. Specifically, the court granted summary judgment on Greensboro Ford's claim that the termination was improper; it also concluded that Michigan law governed the contract. It denied the motion regarding Greensboro Ford's claims that Ford unreasonably withheld approval of the purchase of Greensboro Ford's assets and with respect to Greensboro Ford's claims that Ford failed to support it. The court also denied the motion as to Greensboro Ford's claims for bad faith and attorney fees.

### Case No. A02A0160

1. In its first two enumerations of error, Greensboro Ford claims that the trial court erred in determining that Michigan law applied and in failing to decide the legal issues raised on the cross-motions, based on its interpretation of Michigan law.

The parties' agreement specifically provided that it was to be construed under Michigan law, and "[a]bsent a contrary public policy, this court will normally enforce a contractual choice of law clause." (Citations and punctuation omitted.) *Carr v. Kupfer*, 250 Ga. 106, 107 (296 SE2d 560) (1982). In this case, contrary public policies show that the superior court erred in concluding that the parties' agreement to abide by Michigan law was proper.

Several considerations guide our decision that the superior court should not have enforced the parties' agreement regarding Michigan law. First, the Michigan statute itself regarding motor vehicle dealerships specifically provides that it shall have no application to dealers located outside of Michigan. See Mich. Comp. Laws Ann. § 445.1582. Although Greensboro Ford's complaint is drafted generally, the Michigan statute itself indicates that its law should not control. Compare *Richard Haney Ford, Inc. v. Ford Dealer Computer Svcs.*, 218 Ga. App. 315 (1) (c) (461 SE2d 282) (1995).

We find other policy considerations that indicate that Michigan law should not be controlling in both the Georgia Motor Vehicle Dealer's Day in Court Act, OCGA § 10-1-630, and the federal Automobile Dealers' Day in Court Act (ADDCA), 15 USC § 1222. The latter statute was enacted "to protect automobile dealers from abusive trade practices employed by manufacturers in an extremely concentrated market." *Stamps v. Ford Motor Co.*, 650 FSupp. 390, 395 (N.D. Ga. 1986). In fact:

> The [ADDCA] is a remedial statute enacted to redress the economic imbalance and unequal bargaining power between

large automobile manufacturers and local dealerships, protecting dealers from unfair termination and other retaliatory and coercive practices. The statute permits an automobile dealer to bring suit against an automobile manufacturer for the failure of said automobile manufacturer to act in good faith in performing or complying with any of the terms of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer.

(Citations and punctuation omitted.) *Coffee v. Gen. Motors Acceptance Corp.*, 5 FSupp.2d 1365, 1379 (S.D. Ga. 1998). Accordingly, on this point we reverse the superior court and remand for proceedings consistent with this opinion.

2. Greensboro Ford then argues that the court erred in deciding that Ford's notice of termination was proper even though the notice was mailed to a dealership location Ford knew had been abandoned. Based on our conclusion in Division 1, we remand this case for determination by the superior court under the appropriate law.

### Case No. A02A0161

In the cross-appeal, Ford argues that the trial court erred in denying summary judgment in four manners and that there is no factual issue remaining on: Greensboro Ford's claim that Ford unreasonably withheld approval of prospective purchasers of the Greensboro Ford dealership; on Greensboro Ford's claim that Ford failed to support the Greensboro dealership; on Greensboro Ford's claim that Ford acted in "bad faith"; and on Greensboro Ford's claims for attorney fees.

We find no error in the superior court's denial of Ford's motion on these points. First, based on our reasoning in the Divisions above, we conclude that summary judgment would not have been proper. Secondly, there was sufficient evidence to support the court's findings that there were factual issues on these points. See generally *Ewers v. Ford Motor Co.*, 843 F2d 1331 (11th Cir. 1988).

*Judgment reversed in part and case remanded in Case No. A02A0160. Judgment affirmed in Case No. A02A0161. Ruffin and Barnes, JJ., concur.*

DECIDED JUNE 27, 2002 —
RECONSIDERATION DENIED JULY 16, 2002 

*Anthony Kirkland, David C. Carnahan,* for appellant.

*Sutherland, Asbill & Brennan, John H. Fleming, Russell S. Bonds, Jackie L. Volk*, for appellee.